OBERSTE *v*. MISSOURI PACIFIC RAILROAD COMPANY.

Opinion delivered April 3, 1922.

1. WATERS AND WATER-COURSES—QUESTIONS FOR JURY.—In an action by a landowner against a railroad company for damages for causing a stream to overflow plaintiff's land, whether the overflow was caused by sediment deposited in the stream on plaintiff's land, or because defendant's culvert afforded too small an opening for the stream, *held* under the evidence a question for the jury.

2. WATERS AND WATER-COURSES—DUTY OF LANDOWNER TO KEEP DITCH OPEN—INSTRUCTION.—In an action by a landowner against a railroad company for causing a stream to overflow plaintiff's land an instruction that, if the overflow was caused by the bed of the stream on plaintiff's land being filled by sediment, defendant was not liable, was responsive to the evidence tending to show that the overflow was due to sediment deposited in the bed of the stream

on plaintiff's land, and was correct, even if such deposit was caused by surplus water diverted from its natural course and turned into the stream by defendant.

Appeal from Johnson Circuit Court, *A. B. Priddy,* Judge; affirmed.

*Heartsill Ragon,* for appellant.

*Pryor & Miles,* for appellee.

HUMPHREYS, J.  Appellant instituted suit against appellee in the Johnson Circuit Court for damages to his land and improvements south and east of appellee's depot in Hartman in the years 1917, 1918 and 1919, caused by overflow of his land alleged to have occurred on account of the failure of appellee to provide suitable culverts and openings in constructing its roadbed near Hartman, in said county, to carry off water which had been diverted from its natural course and thrown into a ditch across appellant's land which had theretofore been adequate to carry off the natural drainage.  Appellee filed an answer denying that the culverts were inadequate to carry off the natural drainage and the additional waters diverted from the Logan branch into the branch across appellant's land.  The cause was submitted to a jury upon the pleadings, evidence and instructions, which resulted in a verdict and judgment against appellant, from which is this appeal.

The record reveals that the roadbed and culverts were constructed in 1902.  The road ran east and west by the depot.  Two culverts were constructed across the roadbed near the depot, one just west and the other about 250 yards east of it.  Prior to the construction of the roadbed the lands north and west, as well as south and east, of the depot were drained by a branch over which the two culverts were constructed.  The lands as far north as the Logan branch drained into the branch over which the culverts were constructed.  The Logan branch itself flowed south through the Gray farm, and did not connect with the first branch.  Lands further north were drained by the Logan branch.  Both branches

were dry-weather branches, forming the route of drainage when it rained, and were ample, prior to the construction of the roadbed, to carry off the water during hard rains. In constructing the roadbed appellee formed a dam across Logan branch, no culvert being placed at that point, and turned or diverted the water during rains down the north side of the track until it entered the first branch. The first branch, or the one over which the two culverts were constructed, ran across the roadbed toward the south and through appellant's land to a point about 250 yards east of the depot, where it turned and crossed the roadbed again, over which the culvert on the east side was also constructed. The culvert on the east side of the depot was smaller than the one on the west side.

The testimony adduced on the part of the appellant tended to show that the culverts, especially the one on the east side of the depot, were too small to carry the water diverted from Logan branch, in addition to the natural flow, during hard rains or freshets; that the ditch across appellant's land had been partially filled by sediment deposited by the excess flow of water, and this, in connection with the insufficiency of the culvert east of the depot to carry the excess volume of water, caused the water to back over the banks and flood appellant's land in the years mentioned, to his damage in the several sums alleged.

The testimony introduced on behalf of appellee tended to show that, if the ditch or branch across appellant's land was not obstructed by sediment, or otherwise, the culverts were large enough to carry off the natural drainage, as well as the water diverted from the Logan branch into the first branch.

Appellant's first contention for reversal is that the only reliable evidence in the case disclosed that the east culvert was insufficient in size to carry off the natural drainage and the additional water diverted from Logan branch into the branch across his land during hard rains. It is argued that the witnesses introduced by him were

eye-witnesses to the fact that the east culvert did not furnish sufficient outlet during hard rains in the years 1917, 1918 and 1919, and that on this account his land was overflowed and damaged as alleged. It is true that the witnesses introduced by appellant actually observed the conditions in those years and testified that appellant's land overflowed because the waters entering the branch or ditch were not carried off through the east culvert as rapidly as they entered it. It is also true the testimony shows that the land never overflowed at any time before appellee constructed its roadbed and culverts. It does not follow, however, as a matter of course, that the overflow was due to the insufficient size of the culvert east of the depot. There was evidence tending to show that sediment and dirt had been washed down from the lands west and north of the depot and deposited in the branch running across appellant's land, thereby partially filling the ditch and obstructing the free flow of the water. The obstruction caused by this sediment may have caused the overflow. The inference from the testimony is that no overflow occurred between 1902 and 1917, or until the ditch had been partially filled up on account of the sediment. Appellee had no right to enter upon the land of appellant and clean out the branch or ditch running through it. Appellant could not sit idly by and permit this sediment to accumulate, even though it was deposited from surplus water thrown through this branch or ditch by appellee, and then recover damages from appellee on account of an overflow occasioned by this deposit. If the sediment was deposited on account of the unnatural flow of water, diverted from its natural course into the branch in question by appellee, it was appellant's duty to remove same, being upon his own land, and thereby prevent the water from flooding his land, if possible. In addition to the proof tending to show that the sediment caused the overflow of appellant's land, appellee introduced an engineer who testified that he figured the rainfall, the area to be drained, and the size of the culverts, and from these measurements was of the opinion that the

culverts were ample in size   to carry off all the water when the branch above appellant's land was in its normal condition.   We think the testimony presented a disputed fact determinable solely by the jury.

Appellant also insists that the court erred in giving instructions 4 and 5, which are as follows:

"4.   Now there has been some contention that the openings there were not the proximate result of the damages that was done to plaintiff, but that it was a ditch that filled up; so I will give you that theory of it.

"5.   You are instructed that, if you believe from the evidence in the case that the ditch which heretofore carried off the water south of Mr. Oberste's gin became filled up by natural wash from nearby land into said ditch, then no duty rested upon the railway company to open said ditch, and it became Mr. Oberste's duty to open said ditch, and for the filling of said ditch the railway company is not liable, and your verdict will be for the defendant."

It is argued that there is no evidence in the record to sustain these instructions. We think the instructions objected to were responsive to the evidence tending to show that the overflow was occasioned by sediment deposited in and partially filling the branch running across appellant's land. Even if this were occasioned by surplus water diverted from its natural course and turned into the branch by appellee, it was appellant's duty to keep the branch cleaned on his own land, as appellee had no right to enter upon appellant's premises and clean the branch.

No error appearing, the judgment is affirmed.